IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 20-60171-PMB |
| JEREMY BRIAN HARPER, | CHAPTER:  7 |
| Debtor. | JUDGE:  PAUL BAISIER |
| U.S. BANK NATIONAL ASSOCIATION, | CONTESTED MATTER |
| Movant, | |
| v. | |
| JEREMY BRIAN HARPER, Debtor
S. GREGORY HAYS, Trustee, | |
| Respondent(s). | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the Movant named above has filed a Motion for Relief from the Automatic Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1202, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, at 1:30 P.M., on May 4, 2020.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be

rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Given the current public health crisis, hearings may be telephonic only.  Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone.

*Bryce Noel*

---

Bryce Noel, Bar No.: 620796
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: BNoel@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 20-60171-PMB |
| JEREMY BRIAN HARPER, | CHAPTER: 7 |
| Debtor. | JUDGE: PAUL BAISIER |
| U.S. BANK NATIONAL ASSOCIATION, | CONTESTED MATTER |
| Movant, | |
| v. | |
| JEREMY BRIAN HARPER, Debtor | |
| S. GREGORY HAYS, Trustee, | |
| Respondent(s). | |

MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant named above and shows this Court the following:

1.      This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property by a private power of sale contained in a certain Mortgage, a copy of which is attached hereto and made a part hereof.

2.      Movant is the holder or the servicer of a loan secured by certain real property in which the Debtor has an interest. Said real property is security for a Promissory Note, and is commonly known as 112 Pennine Place, Lexington, South Carolina 29073.

3.      There has been a default in payment of the monthly installments required pursuant to the Promissory Note. As of April 2, 2020, three (3) payments of $882.88 each, which totals to be $2,648.64 have been missed. Pursuant to the Debtor's Statement of Intent, the subject property is being surrendered.

4.      Movant estimates the value of the property to be $142,953.00, based upon Debtor(s)
Bankruptcy Schedules A/B & D.

5.      As of April 2, 2020, Movant's total claim is $99,769.76, consisting of unpaid
principal balance of $79,534.43, accrued interest of $6,098.90, escrow advances of $14,023.73,
and Pro Rata MIP/PMI of $112.70. This is not an exact figure and may not be relied upon for
payoff purposes.

6.      To the best of Movant's knowledge, information and belief, its lien is first priority.
Movant has no knowledge, information or belief as to any other secured claims against the
property, other than a lien for Homeowners Association Assessments in the approximate amount
of $400.00, held by Spring Knoll/Summer Knoll HOA, according to the Debtor's schedules.

7.      Because there may be little or no value in the property over the amount owed on
the property, Movant is not adequately protected and should be permitted to proceed with
foreclosure.

8.      Because there may be little or no equity in the property which could benefit the
estate, the Trustee's interest should be abandoned.

9.      Movant shows that the provisions of Bankruptcy Rule 4001(a)(3) should be waived.

10.      Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The
promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or
through an agent, has possession of the promissory note. Creditor is the original mortgagee or
beneficiary or the assignee of the mortgage or deed of trust.

WHEREFORE, Movant prays for an Order lifting the automatic stay, authorizing it to
proceed with the exercise of its private power of sale and to foreclose under its Loan Documents

and appropriate state statutes.   Movant also prays that the provisions of Bankruptcy Rule

4001(a)(3) be waived, and for such other and further relief as is just and equitable.

Bryce Noel, Bar No.: 620796
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: BNoel@aldridgepite.com

LOAN #: ▮

**Multistate**

## NOTE

FHA Case No. ▮

MIN: ▮

DECEMBER 23, 2010                COLUMBIA,                          SOUTH CAROLINA
[Date]                           [City]                             [State]

112 PENNINE PLACE, LEXINGTON, SC 29073
[Property Address]

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **SOUTH CAROLINA MORTGAGE ASSOCIATES, A SOUTH CAROLINA COMPANY.**

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of **\*\*\*\*\*NINETY THREE THOUSAND FIVE HUNDRED SIXTY SIX AND NO/100\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** Dollars (U.S.   **$93,566.00**   ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of   **FOUR AND THREE-EIGHTHS**                    percent (    **4.375%**   ) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the        **1ST**        day of each month beginning on   **FEBRUARY 1, 2011.**         Any principal and interest remaining on the        **1ST**        day of **JANUARY, 2041**      will be due on that date, which is called the "Maturity Date."
**(B) Place**
Payment shall be made at
**3445 PELHAM ROAD**
**GREENVILLE, SC 29615**

or at such place as Lender may designate in writing by notice to Borrower.
**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S.        **$467.16.**     This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
[Check applicable box]   ☐ Graduated Payment Allonge    ☐ Growing Equity Allonge
                        ☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY
**(A) Late Charge for Overdue Payments**
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of        **15**        calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR**                            percent (        **4.000%**     ) of the overdue amount of each payment.

**(B) Default**
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

FHA Multistate Fixed Rate Note - 10/95
Online Documents, Inc.                          **Page   1   of   2**                    Initials: 

P8700NOT  0804

LOAN #:

**(C) Payment of Costs and Expenses**
If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**
Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Jeremy B. Harper_____ (Seal)
JEREMY B HARPER

ALLONGE TO NOTE
FOR

JEREMY B HARPER
112 PENNINE PLACE
LEXINGTON, SC 29073
LOAN # ███████████

PAY TO THE ORDER OF
S.C. STATE HOUSING FINANCE & DEVELOPMENT AUTHORITY
WITHOUT RECOURSE

SC MORTGAGE ASSOCIATES,
A South Carolina Company

Mark W Wall, owner
Multi Mortgage Services, Inc.
Signing as Power of Attorney

# ALLONGE TO NOTE

## FOR

JEREMY B. HARPER
112 PENNINE PLACE
LEXINGTON, SC 29073
LOAN # █████████

## PAY TO THE ORDER OF
## U.S. BANK NATIONAL ASSOCIATION
## WITHOUT RECOURSE

SC STATE HOUSING FINANCE & DEVELOPMENT
AUTHORITY

_Claude D. Spurlock_

Claude D. Spurlock
Director Mortgage Production

Pay to the order of

_____

Without Recourse
U.S. Bank National Association

_Teresa Bulver_

Teresa Bulver
Vice President

TRUE AND EXACT COPY
OF THE ORIGINAL
THIS IS A

### Limited Power of Attorney

This Limited Power of Attorney is made as of the __21_ day of _____April__, 20_10___ by _____South Carolina Mortgage Associates, A South Carolina Company("Lender"), in favor of Multi Mortgage Services, Inc "Attorney in Fact" and as allowed by the contract by and between the attorney in fact and South Carolina State Housing Authority ("SCSHA").

### Recitals

WHEREAS, Lender originates real estate secured loans which are made, funded or purchased or serviced by South Carolina State Housing Authority ("Loans"); and

WHEREAS, Lender desires to appoint the Attorney's in Fact, each individually, to perform certain administrative and servicing acts relative to such Loans.

### Appointments

1.  Lender hereby appoints each Attorney in Fact as its lawful Attorney in Fact and authorizes each Attorney in Fact to perform the following acts (collectively, "Acts") on Lender's behalf relative to any and all Loans:

    a)  execute any and all documents necessary to transfer and assign Loans to SCSHA or any other assignee including, but not limited to , endorsement of the notes evidencing the Loans and execution of transfers and assignments of mortgages, deeds of trust and security deeds securing the Loans;

    b)  perform any other act in connection with the origination, administration or servicing of Loans which Lender is authorized to do pursuant to the Loan documents, as Attorney in Fact deems necessary or desirable in connection with the origination, administration or servicing of the Loans.

2.  Attorney in Fact may perform the Acts as fully and to all intents and purpose as Lender, with full power of substitution, and Lender hereby ratifies all the Acts Attorney in Fact may do by the Limited Power of Attorney.

3.  This Limited Power of Attorney shall terminate to each individual Attorney in Fact if such Attorney in Fact is no longer employed by Multi Mortgage Services, Inc. Such termination shall not impact the powers of the other Attorneys in Fact to perform all Acts, and upon the termination of any Attorney in Fact, the powers conferred herein shall remain in full force and effect as to all other Attorneys in Fact who remain employed by Multi Mortgage Services, Inc.

4.  For purposes of this Limited Power of Attorney, the terms "Loan" and "Loans" apply only to those Loans originated by Lender which SCSHA makes, funds, purchases or services.

5.  This Attorney in Fact shall be governed by the laws of the State of South Carolina. If any part of this Limited Power of Attorney is deemed to be unenforceable as to one or more parties or in any respect, such determination shall not impair or affect the enforceability of the others terms of this document.

BR-009 2/2010

1

IN WITNESS WHEREOF, Lender has caused this Limited Power of Attorney to be executed by its duly representative under seal as of this day and year first above written.

WITNESSES:

_Valerie Campbell_

Printed Name: Valerie Campbell

Printed Name: _____ Silas Tolles

Lender:

_South Carolina Mortgage Assn._

A South Carolina Company

By: _____

Printed Name: Frank Huguenin

Print Title: _____ Director of Operations

ACKNOWLEDGEMENT

STATE OF SOUTH CAROLINA      )
                             )
COUNTY OF  Greenville        )

On this 21____ day of _____April____, 2010_ before me, a Notary Public, personally appeared _____Frank Huguenin_____ and __Valerie Campbell___, to me known to be the _____Lender's Representative and _____Witness_____, respectively, of Correspondent and who executed the foregoing instrument on behalf of said Lender and acknowledged same as the free act and deed of the Lender.

_____
Notary Public, County of Greenville
State of SC
My commission expires: Dec 6, 2012

BR-009 2/2010

2

## SIGNATURE/NAME AFFIDAVIT

| RE: | LOAN NUMBER | PROPERTY ADDRESS |
|---|---|---|
| | ▮▮▮▮▮▮ | 112 PENNINE PLACE<br>LEXINGTON, SC 29073 |

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, on this day personally appeared, **JEREMY B HARPER**

who, after being by me first duly sworn, upon oath does depose and say:

THAT, **JEREMY B HARPER**
as the name is signed on the note and/or security instrument is one and the same person as;
**JEREMY BRIAN HARPER,  JEREMY HARPER**

as the name appears in various loan documents.

*Jeremy B. Harper*
JEREMY B HARPER

State of:  **SOUTH CAROLINA**

County of:  Richland

Subscribed and sworn to (or affirmed) before me on this ___23rd___ day of ___December___, ___2010___, by _____**JEREMY B HARPER**_____

My Commission expires: __11 Sept 2015__          _____

(Seal)                                                    (Notary Public)

Name Affidavit 5/93
Online Documents, Inc.

GSNA  0801

2010054611 FILED, RECORDED, INDEXED
REC-1    $13.00    ST FEE: $0.00
DEC-1    .3.00    Pages: 7
Lexington County R.O.D. Debra M. Gunter
MORTGAGE Bk:Pg 14653:207

MULTI MORTGAGE SERVICES, INC.
FINAL DOCUMENT DEPARTMENT
10120 TWO NOTCH RD#2,PMB2
COLUMBIA, SC 29223

This instrument was prepared by:
MULTI MORTGAGE SERVICES, INC.
10120 TWO NOTCH RD, SUITE 2 PMB 2
COLUMBIA, SC 29223

LOAN #: ▮▮▮▮▮▮▮▮▮▮

———————————————— [Space Above This Line For Recording Data] ————————————————

**State of South Carolina**

# MORTGAGE



FHA Case No.

MIN: ▮▮▮▮▮▮▮▮▮▮▮▮

THIS MORTGAGE ("Security Instrument") is given on **DECEMBER 23, 2010.**    The Mortgagor is
**JEREMY B HARPER**

("Borrower").
**"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.**
MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box
2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
**SOUTH CAROLINA MORTGAGE ASSOCIATES, A SOUTH CAROLINA COMPANY,**

("Lender") is organized and
existing under the laws of **THE UNITED STATES OF AMERICA,**
and has an address of **3445 PELHAM ROAD, GREENVILLE, SC 29615.**

Borrower owes Lender the principal sum of **\*\*\*\*\*\*NINETY THREE THOUSAND FIVE HUNDRED SIXTY SIX AND
NO/100\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** Dollars (U.S.    **$93,566.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on **JANUARY 1, 2041.**    This
Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as
nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following
described property located in **Lexington**                                County, South Carolina:

which has the address of **112 PENNINE PLACE, LEXINGTON,**
[Street, City],
South Carolina    **29073**            ("Property Address");
            [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and
assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter
erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All
replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests
granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for
Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not

FHA South Carolina Mortgage - 4/96
Online Documents, Inc.                    **Page 1 of 5**                Initials: _J. B.h_
                                                                        SCEFHADE 0802

limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to

LOAN #: ▓▓▓▓▓

provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien, in legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

   **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

      (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

      (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

      (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

      (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

   **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

   **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

   **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

LOAN #: ▮▮▮▮▮▮▮

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the Property.

**21. Future Advances.** The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to one hundred fifty percent (150%) of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider          ☐ Growing Equity Rider     ☐ Planned Unit Development Rider
☐ Graduated Payment Rider    ☒ Other(s) [specify]   **TAX-EXEMPT FINANCING RIDER**

LOAN #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
JEREMY B HARPER

State of SOUTH CAROLINA
County of _Richland_

The foregoing instrument was acknowledged before me this _23rd Dec 2010_ (date)
by JEREMY B HARPER.

_____

_____
Signature of Person Taking Acknowledgement

My commission expires: _11 Sept 2015_

LOAN #:
MIN:

# TAX-EXEMPT FINANCING RIDER
(Must be recorded with 1st Mortgage)

THIS TAX-EXEMPT FINANCING RIDER is made this **23RD** day of **DECEMBER, 2010,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **SOUTH CAROLINA MORTGAGE ASSOCIATES, A SOUTH CAROLINA COMPANY**

("Lender") of the same date and covering the property described in the Security Instrument and located at:
**112 PENNINE PLACE
LEXINGTON, SC 29073**

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to amend Paragraph 9 entitled "Grounds for Acceleration of Debt" by adding additional grounds for acceleration as follows:

Lender, or such of its successors or assigns as may by separate instrument assume responsibility for assuring compliance by the Borrower with the provisions of this Tax Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if:

(a) All or part of the Property is sold or otherwise transferred by Borrower to a purchaser or other transferee:
  (i) Who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143(c) and (i)(2) of the Internal Revenue Code; or
  (ii) Who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Section 143(d) and (i)(2) of the Internal Revenue Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143(d)(1)); or
  (iii) At an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or
  (iv) Who has a gross family income in excess of the applicable percentage of applicable median family income as provided in Section 143(f) and (i)(2) of the Internal Revenue Code; or
(b) Borrower fails to occupy the property described in the Security Instrument without prior written consent of Lender or its successors or assigns described at the beginning of this Tax Exempt Financing Rider, or
(c) Borrower omits or misrepresents a fact that is material with respect to the provisions of Section 143 of the Internal Revenue Code in an application for the loan secured by this Security Instrument.

References are to the 1986 Internal Revenue Code as amended and in effect on the date of issuance of bonds, the proceeds of which will be used to finance the purchase of Security Instrument and are deemed to include the implementing regulations.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions in this Tax-Exempt Financing Rider.

_Jeremy B. Harper_ (Seal)
JEREMY B HARPER

[ADD ANY NECESSARY ACKNOWLEDGMENT PROVISIONS]

SF-047 (08/2008)
FHA TAX-EXEMPT Financing Rider (7/91)
Online Documents, Inc.                    **Page 1 of 1**                    i791SCR 1007

EXHIBIT "A"

All that certain piece, parcel or lot of land, with improvements thereon, situate, lying and being in the
County of Lexington, State of South Carolina, fronting on Pennine Place and being more particularly
shown and delineated as Lot 33 of Spring Knoll Subdivision, Phase 1A, on a plat prepared for Chaim
Neuberg and Sheri Neibery by Cox and Dinkins, Inc. dated April 4, 2005 and recorded in Record Book
10066 at Page 57 in the Office of the Register of Deeds for Lexington County and having such boundaries
and measurements as will more fully appear by reference to said plat.

DERIVATION: This being the same property conveyed to HSBC Bank USA, National Association as Trustee
for Nomura Home Equity Loan, Inc. Asset-Backed Certificates, Series 2005-HE1 by deed of James O.
Spence, Master in Equity of the County of Lexington dated November 12, 2009 and recorded November
24, 2009 in Deed Book 13970 at Page 44 in the ROD Office for Lexington County.

TMS# █████████████

Property Address: 112 Pennine Place, Lexington, SC

DERIVATION:

This is the same/portion of property conveyed to the Grantor ████ ███

from HSBC_____ recorded 12-30-10 and ████ ██

Record Book 14653 Page 202.

2015022228 FILED, RECORDED, INDEXED
05/18/2015 14:45:48:827
REC FEE: $6.00  ST FEE: $0.00
CO FEE: $0.00  Pages: 1
Lexington County R.O.D. Debra M. Gunter
MORTGAGE ASST Bk:Pg 17644:258

RECORDING REQUESTED
AND PREPARED BY:
U.S. Bank Home Mortgage
809 S. 60th Street, Suite 210
West Allis, WI 53214
(866) 787-9167
MARY J IRWIN

And When Recorded Mail To:
U.S. Bank Home Mortgage
809 S. 60th Street, Suite 210
West Allis, WI 53214
ATTN: MARY J IRWIN  JDD

_____ Space above for Recorder's use _____

MERS MIN#: ███████████        PHONE#: (888) 679-6377
Customer# ███████ Service#: ██████████
Loan#: ███████████

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SOUTH CAROLINA MORTGAGE ASSOCIATES, A SOUTH CAROLINA COMPANY, ITS SUCCESSORS AND ASSIGNS,** C/O P.O. BOX 2026, FLINT, MI 48501 2026, by these presents does convey, assign, transfer and set over to: **U.S. BANK NATIONAL ASSOCIATION, 4801 FREDERICA STREET, OWENSBORO, KY 42301 0000,** the described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$93,566.00** is recorded in the State of **SOUTH CAROLINA**, County of **LEXINGTON** Official Records, dated **DECEMBER 23, 2010** recorded on **DECEMBER 30, 2010, as Instrument No. 2010054611, in Book No. 14653, at Page No. 207.**

Original Mortgagor: **JEREMY B HARPER**. Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SOUTH CAROLINA MORTGAGE ASSOCIATES, A SOUTH CAROLINA COMPANY, ITS SUCCESSORS AND ASSIGNS.**

Date: MAY 12, 2015
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SOUTH CAROLINA MORTGAGE ASSOCIATES, A SOUTH CAROLINA COMPANY, ITS SUCCESSORS AND ASSIGNS

By: *Madeline Mejia*
       Madeline Mejia, Assistant Secretary
WITNESS:

*Brandon Bezue*                          *Stephanie Stelmack*
**Brandon Bezue**                       **Stephanie Stelmack**

State of       **WISCONSIN**          }
County of    **MILWAUKEE**         } ss.

This instrument was acknowledged before me on **MAY 12, 2015**, by Madeline Mejia, as **Assistant Secretary** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SOUTH CAROLINA MORTGAGE ASSOCIATES, A SOUTH CAROLINA COMPANY, ITS SUCCESSORS AND ASSIGNS .**

*Courtney Martin*
(Notary Name): **Courtney Martin**

(Title or Rank): **Final Docs Specialist**

My commission expires: **07/15/2017**

NOTARY PUBLIC
COURTNEY MARTIN
STATE OF WISCONSIN

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

IN RE:                                          Case No. 20-60171-PMB

JEREMY BRIAN HARPER,                            Chapter 7

              Debtor.

## CERTIFICATE OF SERVICE

This is to certify that on this day I electronically filed the foregoing **Notice of Hearing and Motion for Relief from the Automatic Stay** using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

Karen King                                      S. Gregory Hays

I further certify that on this day I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties set forth below at the address shown for each.

Jeremy Brian Harper
3156 Mount Zion Rd.
Apt. 1702
Stockbridge, GA 30281

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: April 22, 2020

Bryce Noel, Bar No.: 620796
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: BNoel@aldridgepite.com